HULL ET AL. *v.* BOARD OF COMMISSIONERS OF THE COUNTY OF LAPORTE ET AL.

[No. 24,227.  Filed April 22, 1924.  Rehearing denied July 3, 1924.]

1. MANDAMUS.—*Complaint.—Sufficiency.*—In a suit by the contractor for the construction of a highway under the County Unit Road Law against the board of county commissioners to compel the execution and issuance of bonds for the road, complaint *held* good against demurrer.  p. 154.

2. HIGHWAYS.—*County Unit Law.—Bonds Issued.—Approval of County Council Unnecessary.*—County unit highway bonds are not bonds of the county requiring the approval of the county council under the County Reform Law, but are the bonds of a special taxing district, not payable from county funds, but from funds raised by special taxes on the property of the district.  p. 159.

3. HIGHWAYS.—*Jurisdiction of Board of Commissioners.—Finding of Board Same as Judgment of Court.—Not Subject to Collateral Attack.—Statute.*—In a proceeding to improve a highway under the County Unit Road Law (Acts 1919 p. 531, §7648b1 *et seq.* Burns' Supp. 1921), where the board of commissioners passed on the sufficiency of its own proceedings and held them sufficient, its finding had the same binding effect as the judgment of a circuit court and could be set aside only by appeal to a court of competent jurisdiction.  p. 159.

4. HIGHWAYS.—*County Unit Road Law.—Jurisdiction.—Collateral Attack.—Statute.*—The County Unit Road Law (Acts 1919 p. 531, §7648b1 *et seq.* Burns' Supp. 1921) confers on the board of commissioners of each county jurisdiction of proceedings to improve the public highways of the county under that law, and after a petition has been filed with the auditor, a date for hearing set and notice thereof published and posted as required by law, the board has full and complete jurisdiction of that particular proceeding, and its orders, rulings and judgment are as invulnerable against collateral attack for error or irregularity in the proceedings as if made and entered in the circuit court.  p. 160.

5. HIGHWAYS.—*County Unit Road Law.—Record of Proceedings.—Presumption as to Regularity.—Statute.*—In a proceeding under the County Unit Road Law (Acts 1919 p. 531, §7648b1 *et seq.* Burns' Supp. 1921) to improve a highway, after jurisdiction has been acquired of a particular proceeding, the orders, rulings and judgment of the board of commissioners are supported by the same presumptions of regularity as if made and

entered in the circuit court, and the fact that the record fails to disclose strict compliance with every provision of the statute does not affect the validity of the proceedings, as it will be presumed that whatever ought to have been done was done and rightly done. p. 160.

6. HIGHWAYS.—*Bonds for Construction.—Rate of Interest.—Statute.*—Where, between the time an order was made by a board of county commissioners for the issuance of bonds to pay for the construction of a highway improvement and a subsequent order for the issuance of bonds of smaller denominations at a higher rate of interest, the statute had been changed to allow interest at 6 per cent. instead of 5 (Acts 1921 p. 638, §4, §10139t7 Burns' Supp. 1921), if no remonstrance or objection was filed in the office of the auditor of the county within fifteen days after the order of the board for such issue, the order of the board for such bonds at 6 per cent. was valid and could not be collaterally attacked. p. 161.

7. HIGHWAYS.—*Bonds for Construction.—Issuance of.—Order of Board of Commissioners.—When Final.—Statute.*—In a proceeding for the improvement of a county highway, where the board of commissioners has determined upon the issuance of bonds to pay for the improvement, if no remonstrance or objection is filed in the office of the county auditor within fifteen days after such determination, as provided by the Tax Law (Acts 1921 p. 638, §4, §10139t7 Burns' Supp. 1921), the order of the board for the issuance of bonds is final. p. 161.

8. COUNTIES.—*Action by County Commissioners.—Collateral Attack.—When Warranted.—Unsigned Records.*—A collateral attack on the records, orders and judgments of a board of county commissioners cannot be maintained by showing that the proceedings were irregular and the orders and judgments unwarranted, but it must be shown that such judgments and orders were absolutely void, and nothing but lack of jurisdiction will render such orders and judgments void; it is immaterial on collateral attack that some of the records are unsigned. p. 162.

9. COUNTIES.—*Board of Commissioners.—Cannot Set Aside Orders.*—A board of county commissioners has no equity powers and, therefore, cannot set aside its own orders and judgments, even when obtained by fraud, as no authority has been granted by law so to do. p. 163.

10. TAXATION.—*State Board of Tax Commissioners.—Powers.—Cannot Set Aside Own Orders.*—The State Board of Tax Commissioners has no equity powers and, therefore, cannot set aside its own orders, even when obtained by fraud, as no authority has been granted by law so to do. p. 163.

From St. Joseph Superior Court; *Chester R. Montgomery,* Judge.

Action in mandate by the State of Indiana on the relation of Stephen D. Flynn against the board of commissioners of LaPorte county and the individual members of the board, to compel the execution and issuance of highway bonds, in which Harvey Hull and others intervene. From a judgment for plaintiff, the intervenors appeal. *Affirmed.*

*R. N. Smith, Earl Rowley, C. V. Shields* and *Lemuel Darrow,* for appellants.

*Andrew J. Hickey, Norman F. Wolfe, John B. Dilworth* and *S. J. Crumpacker,* for appellees.

WILLOUGHBY, J.—This was an action commenced by the State of Indiana on relation of Stephen D. Flynn, to compel by mandate the issuance and execution of $125,000 of bonds of the county of LaPorte, under and by authority of the County Unit Road Law, the suit being brought against the board of commissioners of LaPorte county and the individual members of said board.

The board of commissioners demurred to the complaint, alleging insufficiency of facts, which demurrer was overruled and exceptions taken. The commissioners then filed answer in general denial and two affirmative paragraphs of answer setting up portions of the commissioners' records and alleging action by the board of commissioners whereby they canceled and rescinded the contract with relator and the order for the bond issue and also that the State Board of Tax Commissioners had set aside its order approving the bonds and made an order refusing such approval.

The plaintiff demurred separately to the second and third paragraphs of answer, which demurrers were sus-

tained, and then the following proceedings were had, as appears from the order-book entry in said cause.

"And thereupon the first paragraph of answer in general denial, heretofore filed herein on behalf of the Board of Commissioners of the county of LaPorte and the individual members thereof, the principal defendants, is withdrawn by counsel, and the said Board of Commissioners of the county of LaPorte, and the individual members thereof refuse to plead further to the complaint herein, and elect to abide the ruling of the court heretofore made sustaining the demurrers to the second and third paragraphs of answer interposed by them.

"And the defendants, the Board of Commissioners of the county of LaPorte, and the individual members thereof, and the intervening defendants, Harvey Hull, *et al.*, failing and refusing to answer further and electing to stand on their said answers and abiding the ruling of the court on the demurrers thereto, judgment is now rendered in favor of the plaintiff against the principal defendants and intervening defendants upon the demurrers.

"It is therefore, considered, adjudged and ordered and decreed by the court that the Board of Commissioners of the county of LaPorte, Indiana, and the individual members comprising the same, do execute, sign and turn over to the county treasurer of LaPorte county, Indiana, to be sold in all respects as provided by law, $125,-000 of County Unit Road bonds, for the construction of a highway in LaPorte county, Indiana, established in a proceeding before the Board of Commissioners of the county of LaPorte, Indiana, upon the petition of L. J. Gross, *et al.*, as provided in an order of the Board of Commissioners of the county of LaPorte entered on the 19th day of May, 1921, and that the re-

lator recover his costs herein taxed at $. . . . . . . . dollars of and from the Board of Commissioners of the county of LaPorte.   *   *   *"

After judgment, the intervening defendants, Harvey Hull, et al., prayed an appeal to the Supreme Court of Indiana, and the appellants have assigned and rely upon the following errors for reversal of the judgment.   (1) The court erred in overruling appellants' demurrer to plaintiff's complaint.   (2) The court erred in sustaining appellee Flynn's demurrer to appellants' second paragraph of answer.   (3) The court erred in sustaining appellee Flynn's demurrer to the appellants' third paragraph of answer.

Was the complaint sufficient?   The complaint recites that the plaintiff is the holder of the contract for the construction of the highway known as the L. J. Gross road in LaPorte county, Indiana.  It shows that the petition signed by fifty or more freeholders and voters of said county, was filed on March 31, 1919, in the office of the auditor of LaPorte county, Indiana.   The auditor indorsed at the time of filing of the petition, on said petition that it would be presented to the board of commissioners on April 22, 1919, and notice was published and posted as required by the statute.

On April 22, 1919, proof of publication of the notice in the LaPorte Argus, published in LaPorte county, was made, a copy of which notice is set out in the complaint.   The notice contained a statement that the petition would be heard on April 22, 1919, in the county of LaPorte, Indiana.   An affidavit was filed showing proof of publication.   Also proof of posting of notices at least ten days before the date set for hearing was made in every township in LaPorte county and at the door of the courthouse and a copy of such notice is set out.   It shows that the notices were posted more than

ten days prior to April 22, 1919, and that they were posted by the deputy sheriff of LaPorte county, Indiana.

The complaint also recites that no taxpayer, person or corporation appeared to file objections to said petition, and the board heard evidence and made a finding that legal notice had been made and posted according to law and that the said petition is sufficient in form and substance and it is ordered spread upon the records of the board in full. It further alleges that on June 5, 1919, being the fourth day of the June term, 1919, the members of the county council of LaPorte county made their report declaring that they met at the time and place designated and viewed the road and declared the same to be a public utility to drain, pave and grade the same with a twelve foot asphalt macadam pavement along the lines as petitioned and afterward on August 21, 1919, the board, reciting that the board being in regular session after the expiration of ten days from the filing of the report of the engineer and commissioners, the said commissioners and engineers made their supplemental report in writing in the matter of damages, and determined that the estimated cost of the improvement was in the sum of $72,000.

The complaint sets out the report of the commissioners and engineers in full. It also sets out the supplemental report ordering the highway established as prayed for, and finding that no election on the question of improvement is necessary and fixes the time for receiving bids and awarding the contract as January 8, 1920, and orders that the county auditor give notice one time at least two weeks previous to the day set by the board of commissioners for the letting of the contract and said notice shall be published in a daily newspaper of general circulation throughout the county and state and shall be published for two consecutive weeks in a newspaper of general circulation in LaPorte

county, Indiana. It recites that on December 20, 1919, proof of publication of notice was made showing that the notice was published for two consecutive weeks in the Indianapolis Commercial and on January 3, 1920, proof of publication for two consecutive weeks in the LaPorte Argus was made, and a copy of the notice is set out in the complaint, and on January 8, 1920, no bids being offered, the matter was continued. Then on March 3, 1920, the commissioners and engineers in the same matter filed an additional report as to the estimated cost of the construction of said improvement of the said highway in which report they find the estimated cost of said road is $125,000. The auditor ordered notice given that bids would be received for the contract for construction of said road on March 25, 1920, and a copy of the notice is set out in the complaint.

On March 25, 1920, the board opened the bids and found the following bids: Municipal Contracting & Supply Co., $125,000; Louis Matine, $124,000; A. W. Taylor Company, $122,000; Stephen Flynn, $117,525. The board took such bids under advisement and found that Stephen Flynn was the lowest and best bidder. He then gave bond in the sum of $235,000 for the construction of the road according to plans and specifications as prepared by the county surveyor.

On the same day, March 25, 1920, a contract was executed for the construction of said road and the contract is set out in the complaint.

On April 8, 1920, the board ordered the bonds of the county to be issued in the sum of $125,000 to pay for the construction of the road and expense and to pay the engineer and superintendent during the construction. The bonds were ordered issued payable at the county treasurer's office in LaPorte county, Indiana. To be forty in number, numbered consecutively for the

sum of $3,125 each, due and payable as follows: Bond No. 1 due and payable on May 15, 1921, and of the remaining bonds, one shall be due and payable at the expiration of every six months thereafter, bonds to pay interest at five per cent. per annum, semi-annually. The auditor of LaPorte county was ordered to file with the State Board of Tax Commissioners an application for permission to issue the bonds as above stated. On June 2, 1920, the State Board of Tax Commissioners considered the application for permission to issue the bonds as above named and the board approved such issue and on November 15, 1920, the bonds were duly executed. Afterwards on April 9, 1921, fifty-seven petitioners requested the board of commissioners to petition the said State Board of Tax Commissioners to allow them to reissue the bonds for the purpose of constructing the Gross road, said bonds having been issued in inconvenient and large denominations and bearing five per cent. interest, they could not be sold. Petition requested that the bonds be issued in smaller denominations bearing six per cent. interest. The board made application to the State Board of Tax Commissioners to reissue said bonds in denominations of $625 each and bearing interest at six per cent. instead of five per cent., they also set the time for filing objections on May 7, 1921, and the auditor was requested to give notice required by law, which notice was given. No objections were filed to said application before the State Board of Tax Commissioners, and on May 10, 1921, said state board entered its order approving the issuance of bonds by this board, not exceeding $125,000, with interest at the rate of six per cent. in the denominations desired and maturing in the manner provided by law, for the purpose above stated.

The complaint further states that on May 19, 1921, the old bonds issued at the rate of five per cent. interest

were ordered destroyed and the issue of bonds provided for on May 19, 1921, were printed, but have never been signed by the county commissioners or turned over to the treasurer for sale.

The complaint further alleges that "this relator avers the fact to be that proceedings were had by and before the State Board of Tax Commissioners of Indiana, approving the issue of bonds in all respects as recited in the order made by the Board of Commissioners of LaPorte county, Indiana, on the 19th day of May, 1921, as hereinbefore set out. Relator further shows unto the court that pursuant to said order of May, 1921, the auditor of LaPorte county caused to be printed the bonds of said county in all respects as provided for in said order of the Board, but that the same have never been signed by the County Commissioners or turned over to the county treasurer for sale.

"Relator further showeth that heretofore and prior to the institution of this suit, he made demand upon the board of county commissioners to sign said bonds and turn the same over to the treasurer to be sold as required by law in order that fund might be made from which to pay this relator for the construction of said road according to his contract, but that said defendants, as county commissioners aforesaid, wholly failed and refused and still fail and refuse to execute and sign the said bonds and to turn them over to the county treasurer to be sold as provided by law.

"Wherefore, this relator as such petitioner prays the court that he may be awarded a judgment herein ordering and commanding the said defendants as the board of commissioners of the county of LaPorte, Indiana, to execute and sign the bonds heretofore authorized and ordered for the construction of said L. J. Gross road and to turn the same over to the county

treasurer of LaPorte county to be sold in all respects as provided by law."

It is urged by appellants in this case that the record fails to show that the board of county commissioners did refer the case to the engineer and board of commissioners, and that the record of the board of commissioners fails to show each step taken in the proceedings to make findings and report. All notices required by statute were given in the beginning of this proceeding and the record shows that the commissioners and engineer filed a report as required by law. The county council decided the road to be a public utility as required by §38 of the County Unit Road Law, Acts 1919 p. 531, §7648b1 *et seq.* Burns' Supp. 1921. The commissioners and engineer made findings and reported as required by law; the report was accepted and approved, the road was established, contract let, and bonds ordered for the construction of the same, with the approval of the State Board of Tax Commissioners.

It will be observed that the county unit highway bonds are not bonds of the county requiring the approval of the county council under the County Reform Law. They are the bonds of a taxing district payable only by a special taxing district, and no county funds may be used to pay them. *Forrey* v. *Board, etc.* (1920), 189 Ind. 257: *Smith* v. *Board, etc.* (1910), 173 Ind. 364.

In this case, the board of commissioners passed on the sufficiency of its own proceedings and held them sufficient. Such a finding was a judicial determination of the sufficiency of the proceedings, and had the same binding effect as the judgment of a circuit court and could be set aside only by appeal to a court of competent jurisdiction. Of course, this does not apply to actions by the commissioners which are wholly beyond the scope of their authority, which they

might not take upon any notice or under any circumstances. *Chicago, etc., R. Co.* v. *Sutton* (1892), 130 Ind. 405.

The County Unit Road Law, Acts 1919 p. 531, *supra,* expressly vests in boards of county commissioners, jurisdiction in such cases as this, that is, it gives 4, 5. the board of county commissioners jurisdiction of the subject-matter, that is to say, jurisdiction of the class of cases to which this particular case belongs. See, *Jackson* v. *Smith* (1889), 120 Ind. 520; *State, ex rel.,* v. *Wolever* (1891), 127 Ind. 306. The petitioners filed their petition with the auditor and a date for hearing was set by the auditor and notice was published and posted as required by law. On the date set, the county commissioners met and received proof of publication and posting of notices and adjudged the petition to be in due form and sufficient, and that notices had been published and posted as required by law. This vested the board of commissioners with full jurisdiction of the case. See Acts 1919 p. 531, *supra; Todd* v. *Crail* (1906), 167 Ind. 48. After jurisdiction had been thus established, the orders, rulings and judgments of the county commissioners are as invulnerable against collateral attack for error or irregularity in the proceedings, and are supported by the same presumptions of regularity, as if entered by the circuit court. It is no defense to this action that the record fails to disclose strict compliance with every provision of the statute after jurisdiction was once acquired. If the record was silent, it will be presumed that whatever ought to have been done was not only done, but was rightly done. *Grimwood* v. *Macke* (1881), 79 Ind. 100; *Todd* v. *Crail, supra; Smith* v. *Hess, Sheriff* (1884), 91 Ind. 424; *Brooks* v. *Morgan* (1905), 36 Ind. App. 672; *Horner* v. *Doe* (1848), 1 Ind. 130, 48 Am. Dec. 355; 15 R. C. L. 893.

On September 20, 1920, when the State Board of Tax Commissioners considered the application for permission to issue bonds, as determined by the board 6, 7. of commissioners in this matter, the State Board of Tax Commissioners approved the bonds, and the law at that time required that the rate of interest should not exceed five per cent. Afterwards on April 9, 1921, when the board ordered the issue of the bonds in smaller denominations at the rate of six per cent. per annum, the statute had been changed so as to authorize a rate of six per cent. and it also had been changed so as to provide that if ten or more taxpayers in such municipal corporation other than those who pay poll-tax only, and who will be affected by the proposed issuance of such bonds or other evidences of indebtedness and may be of the opinion that such bonds or other evidences of indebtedness should not be issued or that the proposed issue is excessive for the proposed purpose thereof, may file a petition in the office of the auditor of the county in which such corporation is then located within fifteen days after such issuance of bonds shall have been determined upon, setting forth their objections and stating facts showing that such proposed issue is unnecessary, unwise, or excessive, as the case may be. Upon the filing of any such petition, the county auditor shall immediately certify a copy thereof, together with such other data as may be necessary in order to present the questions involved, to the State Board of Tax Commissioners, and upon the receipt of such certified petition and information, the state board shall fix a time and place for the hearing of such matter (Acts 1921 p. 638, §4, §10139t7 Burns' Supp. 1921). It appears from the complaint in this case that no remonstrance or objection as provided by such statute was ever filed within the time required by law in the

office of the auditor of the county and therefore the order of the board of county commissioners ordering the issuance of such bonds was final.

In *O'Connor* v. *Board of Commissioners, etc.* (1924), 194 Ind. 386, which was an action to enjoin the board of commissioners from canceling an alleged contract to construct a highway and reletting the same, decided at this term of this court on March 11, 1924, the court said, "The petition objecting to the issue of bonds gave the board of tax commissioners jurisdiction; it was not the notice. The notice had no control over the action of the municipal board determining to issue bonds. The notice served its purpose in notifying the taxpayers of the determination to issue bonds, who knew the rate of interest provided by the statute, and its function was not jurisdictional. Had notice not been given, the petition, together with such other data as may be necessary in order to present the questions involved, would have invested the board of tax commissioners with jurisdiction to act on the petition and to decide the question. The misstatement of the rate of interest as provided by the statute   *   *   *   did not make unlawful either the act in determining to issue bonds or the decision of the board of tax commissioners in disapproval of such determination."

The defense interposed in this suit is a collateral attack upon the proceedings of the board of county commissioners leading up to the order sought to be carried into effect, and upon the orders and judgments of that board. In order to support a collateral attack upon the records, orders and judgments of a board of county commissioners, it must be shown not only that the proceeding was irregular and the judgments unwarranted, but that such judgments and orders were absolutely void. *Board* v. *State, ex rel.* (1921), 191 Ind. 335; *Waugh* v. *Board, etc.* (1917), 64

Ind. App. 123. Nothing but lack of jurisdiction will render such orders and judgments void. *Todd* v. *Crail, supra.*

That some of the records are unsigned is immaterial in a collateral attack. *Weir* v. *State, ex rel.* (1884), 96 Ind. 311; *Goddard* v. *Stockman, Treasurer* (1881), 74 Ind. 400; *Board* v. *State, ex rel., supra.*

The second and third paragraphs of answer were affirmative paragraphs. They set out the record of the commissioners' court and copies of orders made and papers filed therein, making such answers of great length. We do not think it necessary to set out the answers in this opinion. They allege the same irregularities urged against the complaint by appellants in their demurrer and, in addition, allege that the board of commissioners set aside their order establishing the improvement and ordering the bonds issued and made an order that no bonds be issued, and that the State Board of Tax Commissioners set aside their order approving the bonds and entered an order that such bonds be not issued. The board of commissioners and the state tax board have no equity powers and therefore cannot set aside their own judgments and orders even when obtained by fraud, no authority having been granted by law so to do. *Town of Woodruff Place* v. *Gorman* (1912), 179 Ind. 1; *Doctor* v. *Hartman* (1881), 74 Ind. 221; *Plew* v. *Jones* (1905), 165 Ind. 21; *Steinmetz* v. *G. H. Hammond Co.* (1906), 167 Ind. 153.

Our conclusion is that the court did not err in overruling the demurrers to the complaint or in sustaining the demurrers to each affirmative paragraph of answer.

Judgment affirmed.

Travis, J., not participating.