STATE OF INDIANA, EX REL. ADAM ET AL. *v.* MARTIN, COUNTY AUDITOR, ET AL.

[No. 24,822. Filed December 8, 1926.]

1. COUNTIES.—*Judgment of county commissioners not subject to collateral attack except for fraud.*—A judgment of the board of county commissioners in a matter of which it had jurisdiction, not appealed from, can only be set aside on the ground of fraud. p. 524.

2. PLEADING.—Fraud cannot be charged by the use of epithets, but the facts constituting the fraud must be stated in the pleading. p. 524.

3. HIGHWAYS.—*Decision of board of county commissioners accepting highway improvement cannot be declared void in collateral attack by allegations that decision was erroneous.*—A decision of a board of county commissioners that a highway improvement has been completed according to the contract and

specifications and should be accepted is a judicial decision in a matter of which the board had jurisdiction, and it cannot be declared void in a collateral attack although alleged that the facts were otherwise than as found by the board.   p. 525.

4. MUNICIPAL CORPORATIONS.—*Acceptance of public improvement not subject to collateral attack except for fraud in procuring it.*—The acceptance of a municipal improvement by the body to which authority is given is final and conclusive between the parties except on appeal therefrom, and is not subject to collateral attack except for fraud in procuring it.   p. 526.

5. HIGHWAYS.—*Fraud in procuring the acceptance of a highway improvement was not charged by averment of facts "concealed" from the board by the contractor.*—Averments that a decision of a board of county commissioners that a highway improvement had been completed according to the contract and specifications and should be accepted was erroneous because of facts unknown to the board and known to the contractor, who "concealed" them from it, do not amount to a charge of fraud in procuring the acceptance.   p. 526.

6. HIGHWAYS.—*Acceptance of highway improvement not obtained by fraud when contractor falsely informed board he had completed improvement according to contract, when board heard evidence on that issue.*—That a highway contractor had told the engineer in charge of a highway improvement and the county commissioners that he had fully performed his contract according to its terms, and constructed the improvement according to the specifications, when he had not, would not constitute fraud sufficient to set aside the board's acceptance of the improvement after hearing evidence on that issue. p. 526.

7. HIGHWAYS.—*Fraud of contractor in procuring false testimony at hearing to determine whether highway improvement should be accepted as completed not ground for setting aside acceptance.*—The fraud of a contractor in procuring false testimony to be given at a hearing before a board of county commissioners to determine whether a highway improvement has been completed according to his contract and the specifications and should be accepted is not ground for vacating the board's acceptance thereof, as the existence of the perjury could only be ascertained by a retrial of the issue.   p. 526.

8. JUDGMENT.—*Procuring false testimony to be given at a trial no ground for setting aside judgment for fraud.*—Procuring false and fraudulent testimony to be given at a trial affords no basis for vacating the judgment rendered, as the existence of the perjury could only be determined by a retrial of the issue in the former action.   p. 526.

9. JUDGMENT.—*Fraud in procuring court to exercise jurisdiction or other matter extrinsic to question to be tried must be shown to set aside judgment.*—A judgment cannot be successfully attacked on the ground of fraud unless the fraud was in procuring the exercise of jurisdiction or other matter extrinsic to the question to be tried and decided by the court.    p. 526.

10. MANDAMUS.—*Board of county commissioners held not party in interest so as to authorize it to intervene in order to set aside decision of board accepting highway improvement.*—A board of county commissioners which intervened in an action to mandate the county auditor to carry out an acceptance of a highway improvement and filed a cross-complaint to set aside the acceptance had not such interest in the matter as authorized it to intervene for that purpose.    p. 528.

From Jay Circuit Court; *E. E. McGriff,* Judge.

Action of mandate on the relation of John Adam and another to compel Henry Martin, as county auditor, to deliver certain warrants to them as highway contractors, in which the board of county commissioners intervened and it and the defendant filed cross-complaints. From a judgment for the cross-complainants, the plaintiffs appeal. *Reversed.*

*Ira M. Sharp,* for appellants.
*James R. Fleming, George T. Whitaker* and *Byron G. Jenkins,* for appellees.

EWBANK, J.—This was an action of mandamus against the auditor of Jay county, Indiana, commenced by appellant on the relation of John Adam and William Adam, to compel the auditor to deliver to relators warrants for $7,600 which the board of commissioners of that county had ordered to be drawn and delivered to them in final payment of the cost of constructing a brick road, built in Wayne township of that county under the provisions of the three mile road law. The defendant filed a cross-complaint as auditor of the county and another cross-complaint as a taxpayer of Wayne township, and the board of commissioners also filed a cross-

complaint, all the cross-complaints being exactly alike except for averments in each purporting to set forth the right of the cross-complainant to sue. And each cross-complaint asked that the order of the board of commissioners accepting the road as completed be set aside and vacated, and that the board of commissioners be made to require that relators should complete the road in accordance with the report of the viewers, the plans, specifications, plats, profile and contract. A demurrer to each cross-complaint was overruled and plaintiff excepted. An answer of general denial and an affirmative plea of former adjudication were filed to each of the cross-complaints and a reply of general denial was made to the affirmative answers. The defendants answered the complaint by a general denial. On proper request, the court made a special finding of facts, upon which it stated conclusions of law in favor of the cross-complainants, to each of which conclusions, the plaintiff excepted. Plaintiff also filed a motion for a new trial for the alleged reasons that the finding is not sustained by sufficient evidence and is contrary to law and that certain evidence was improperly admitted. Error is assigned upon the conclusions of law, and upon the overruling of the demurrers to the several cross-complaints and the overruling of the motion for a new trial.

The complaint alleged, in substance, that by proper and regular proceedings the board of commissioners undertook the construction of the brick road in question and sold bonds, from the proceeds of which they appropriated to pay for its construction the sum of $38,000, at which price they let a contract to relators to build it. That the relators did build and construct the road under the supervision and direction of an engineer and superintendent appointed for that purpose by the board of commissioners, and that, on July 21, 1917, there was

a balance unpaid of the contract price amounting to $7,600, and on that date the superintendent and engineer filed their sworn certificate and statement that the road had been completed by relators in accordance with the plans and profile and specifications, and that they recommended its acceptance, and that the relators, said contractors, be paid the balance of the contract price. That a few days later a taxpayer of Wayne township filed a remonstrance against the acceptance of the road, and thereupon the relators filed their claim with the county auditor for said balance of the contract price, and upon submission of such claim and remonstrance to the board of commissioners at the regular August term, 1917, the board of commissioners made and entered of record a finding and judgment that the cause was submitted, "and the board having heard the evidence and being fully advised in the premises, finds and adjudges that the construction of the public highway in said cause is fully completed by the contractors according to the plans, specifications, maps and profile and according to the contract therefor, and that the material used was of the quantity and quality specified in the specifications for the construction of said road; that said highway be accepted as completed, and it is hereby made a part of the free gravel road system of said county, and to be kept in repair out of the free gravel road fund of said county. And the county auditor is ordered to draw a county warrant in favor of the contractors for the balance of the contract price in the sum of $7,600," and judgment was rendered against the remonstrator for costs. That said judgment and order remains in full force and effect, and that at the time it was made and entered and at all times since there was and has been sufficient money derived from the sale of said bonds and appropriated to the payment of said contract price in the hands of the treasurer of the county with

which to pay said sum of $7,600. And that demand was made, etc.

The cross-complaints were filed in November, 1921, more than four years after the judgment accepting the work was rendered. Neither cross-complaint denied or in any way challenged the truth of the foregoing facts, as alleged in the complaint. But each averred, in substance, that the contract between the board of commissioners and relators for the construction of the brick road in Wayne township was duly entered into and that relators entered upon the construction of the road and did lay and complete a pavement of brick, the alleged defects in which "would only become apparent through the continued use of said highway." That the engineer and superintendent certified that the road was completed, as was alleged in the complaint, "and that on the —— day of August, 1917, the said board of commissioners of Jay county, Indiana, being in regular session, accepted said free brick road as completed, and ordered payment to said plaintiffs of the balance remaining unpaid on said contract price, in the amount of $7,600." Neither cross-complaint alleged what were the provisions of the contract, report of the viewers, plans and specifications and profile, and while it was averred that all of these were filed with the cross-complaints as exhibits, none of them is shown by the transcript to have been so filed, and none of them is copied into the record for any purpose, if, indeed, it could be possible to make such instruments part of a pleading merely by filing them as exhibits, when the alleged cause of action was not founded thereon. *Excelsior Draining Co.* v. *Brown* (1871), 38 Ind. 384, 388, 389; *Wilson* v. *Vance, Admr.* (1877), 55 Ind. 584, 588; *Fisher* v. *Hamilton* (1874), 49 Ind. 341, 343; *Conwell* v. *Conwell* (1885), 100 Ind. 437, 438; *Gum-Elastic Roofing Co.* v. *Mexico Publishing Co.* (1895), 140 Ind. 158,

160, 39 N. E. 443, 30 L. R. A. 700; *Marshall* v. *Matson* (1908), 171 Ind. 238, 242, 243, 86 N. E. 339; *Aldrich* v. *Amiss* (1912), 178 Ind. 303, 305, 99 N. E. 419; §386 Burns 1926, §362 R. S. 1881.

But each cross-complaint alleged that the contract, report, plans and specifications required that certain things should be done in preparing the subgrade for the pavement, and that without having done them, the plaintiffs covered the surface of the highway with brick and stone, "thus preventing said board of commissioners from ascertaining the true condition of said subgrade." And that the contract required a foundation of crushed stone of certain dimensions to be of a depth as stated, as a base for the pavement, and that the plaintiffs had built such base of an insufficient thickness. Also that the contract called for hard-burned paving bricks "of standard test and first class in every respect," but that the plaintiffs had used second-class bricks which were soft, brittle and inferior in quality. That these defects were of such a character that they would not and did not become apparent from the use of the road until it had been used for a long time (the cross-complaints being filed, as we have stated, more than four years after the board of commissioners had accepted the work and adjudged the road completed in accordance with the contract). That the engineer was absent much of the time while the road was being constructed and did not keep informed as to the quantity and quality of the materials entering into its construction or the manner of such construction, and the superintendent had no such knowledge or skill as enabled him to know the quantity or quality of materials used or whether the road was being constructed in accordance with the plans and specifications, and that the members of the board of commissioners did not have the "peculiar skill and

knowledge" necessary to know those facts, and neither did the engineer nor the superintendent. And without having alleged what, if any, statements or representations under oath the relators made, or to whom they were made, or directly averring that they made any sworn statements at all, it was averred that the engineer, superintendent and board of commissioners, "relying upon the sworn statements made by said plaintiffs that said road was completed according to the viewers' reports, plans, plats, profile and contract therefor, and believing said sworn reports to be true, accepted and adjudged said road as completed and made said order directing the defendant, Henry Martin, as auditor of Jay county, Indiana, to pay to said plaintiffs, said sum of $7,600"; and it was repeatedly averred that in order to procure the certificate of completion from the engineer and superintendent and the acceptance of the road from the board of commissioners, relators "fraudulently and deceitfully represented" to them that the subgrade had been properly made and the broken stone base properly constructed, and that the bricks were of the quality as provided for in the contract and specifications, and that relators at the time knew the contrary to be true, but the board of commissioners, the engineer and the superintendent were ignorant of the existence of any defects. It was also alleged that after having provided the sub-base which was defective in the particulars named, and the broken stone base of insufficient thickness in places, as alleged, the relators "fraudulently concealed" those facts by laying the brick pavement thereon, and that, with knowledge of all the alleged defects in the different parts of the highway improvement, they "fraudulently and deceitfully concealed these facts" from the board of commissioners.

That the facts alleged would be cause for setting aside

the acceptance of the improvement upon an appeal from the board of commissioners may be assumed. 1, 2. But a judgment not appealed from, in a matter where the board of commissioners had jurisdiction to render it, can only be set aside in such an action as this on the ground of fraud. And the rule is well established that fraud cannot be effectually charged by the use of epithets, in the absence of allegations of facts which constitute fraud. These cross-complaints did not allege that the contractor had paid two or three dollars a day to the inspector under whose supervision the work was done to induce him to overlook the defects in construction and to report that the work was done according to contract, although he knew at the time that such report was not true, as in the leading cases cited by appellees. *Gorman* v. *Johnson* (1910), 46 Ind. App. 672, 674, 675, 91 N. E. 971; *Town of Woodruff Place* v. *Gorman* (1912), 179 Ind. 1, 7, 100 N. E. 296. Neither was it alleged that the contractor had employed the members of the board of commissioners by whom the question whether the improvement had been completed according to the contract was to be decided, and had paid them wages by which they were influenced to make an erroneous decision, as in another case they cite. *Green* v. *Shanklin* (1900), 24 Ind. App. 608, 610, 611, 57 N. E. 269.

Neither was it alleged that the engineer or superintendent, with knowledge that the work had not been done according to contract, made a report that it had been so completed, with intent to deceive the board of commissioners; or that the members of an administrative board, not having judicial powers, with knowledge that the work had been improperly done and was defective, arbitrarily had entered a finding and order that it was completed according to the contract and was accepted, without having heard evidence, when they knew

it had not been so completed, as in other cases on which appellees rely. *Alsmeier* v. *Adams* (1914), 62 Ind. App. 219, 253, 105 N. E. 1033; *Neil* v. *Turner* (1919), 77 Ind. App. 78, 82, 90, 125 N. E. 228.

And there was no suggestion that an administrative board charged with the duty of accepting the work did not, as stated in the record of the proceedings of this board set out in the complaint, hear evidence as to whether or not the improvement had been constructed according to the contract and specifications, or that they did not act honestly and in good faith in deciding from the evidence that the improvement had been constructed according to the plans and specifications at the time the work was accepted, as in another case offered by appellees as an authority. *Windle* v. *City of Valparaiso* (1916), 62 Ind. App. 342, 355, 113 N. E. 429. And see *Lux, etc., Stone Co.* v. *Donaldson* (1903), 162 Ind. 481, 486, 487, 68 N. E. 1014.

No facts were alleged to the effect that the relators occupied a fiduciary relation toward the board of commissioners or anybody else, and took advantage of that relation of trust and confidence purposely to deceive the board with regard to a matter of business which relators had undertaken to transact on its behalf, as in still another case cited. *Dunker* v. *Calahan* (1916), 64 Ind. App. 624, 630, 631, 113 N. E. 15.

The decision of the board of commissioners that the highway improvement had been completed according to the contract and should be accepted, and that 3. the contractors should receive pay for its construction, was a judicial decision by a tribunal that had jurisdiction to make it. And the decision, even if erroneous, was not void, but is proof against an attack based upon mere allegations that the facts really were otherwise than what the board of commissioners found them to be. *State, ex rel.,* v. *Board, etc.* (1925),

196 Ind. 281, 290, 140 N. E. 198; *Hull* v. *Board, etc.* (1924), 195 Ind. 150, 143 N. E. 589.

"According to the great weight of authority, under most of the statutes and in the absence of a statute granting a right to contest the question whether

4. the work has been done in conformity to the terms of the contract, the rule is that the acceptance by the Highway authorities is conclusive upon the property owners, unless procured by fraud." 2 Elliott, Roads & Streets §728; *Town of Woodruff Place* v. *Gorman, supra; Darnell* v. *Keller* (1896), 18 Ind. App. 103, 108, 45 N. E. 676; *Alsmeier* v. *Adams, supra.*

If the record shows that the court or other tribunal by which an assessment was confirmed had jurisdiction, a judgment of confirmation made by such court or

5. other tribunal is final and conclusive between the parties until and unless set aside for fraud in procuring it, and is not subject to collateral attack. 2 Page & Jones, Taxation by Assessment §927. And where it appears that an issue was joined as to whether or not the improvement had been completed in compliance with the contract, and the board of commissioners in passing on that question had decided that it had, mere allegations that by reason of facts alleged to have existed prior to the hearing thereon having been unknown to the board, the decision was erroneous, and that the contractor knew of such facts and did not disclose them to the board but "concealed" them from it, do not amount to a charge of fraud in procuring the entry of the judgment of acceptance. *Lux, etc., Stone Co.* v. *Donaldson, supra; Board, etc.*, v. *Wolff* (1905), 166 Ind. 325, 329, 76 N. E. 247.

The mere fact, if it were a fact, that the contractors told the engineer and superintendent and mem-

6-9. bers of the board of commissioners that they had fully performed the contract according to its terms

and had built the improvement in compliance with the specifications, when they actually had failed to fill up certain mud holes with a sufficient quantity of stone to constitute a permanent foundation, and had failed to cover the ground with broken stone to a sufficient depth before laying the bricks and had used second-grade bricks instead of the first grade contracted for, would not constitute fraud upon allegation and proof of which the judgment that the board had entered, after having heard evidence, finding and deciding that the contract was fully completed, could be set aside. Even the fraud of a plaintiff in procuring testimony to be given at the hearing on this question would afford no basis for vacating the judgment in an equitable proceeding, for the reason that the existence of perjury can rarely or never be ascertained otherwise than by trying anew an issue already tried in the former action. And much less could the fact that the contractor had told them the work was properly done when inviting them to investigate and hear evidence and determine whether or not it was. *Friebe* v. *Elder* (1914), 181 Ind. 597, 607, 608, 105 N. E. 151; *United States* v. *Throckmorton* (1878), 98 U. S. 61, 25 L. Ed. 95. The fraud must be in procuring the exercise of jurisdiction, or other matter extrinsic to the question tried and decided by the court, or the judgment cannot be successfully attacked in a suit to vacate it on the ground of fraud. *Friebe* v. *Elder, supra; Walker* v. *State, ex rel.* (1908), 43 Ind. App. 605, 606, 86 N. E. 502.

"It is the general rule that a judgment cannot be impeached for fraud by a party or privy to it, unless the fraud affects the jurisdiction of the court or appears on the face of the judgment roll itself. * * * It is sometimes said that it is a maxim of the law that fraud vitiates everything into which it enters, but this maxim must be taken, like other general maxims, to apply to

cases where proof of fraud is admissible. Where the same matter has been either actually tried, or so in issue that it might have been tried, it is not again admissible; and the party is estopped to set up such fraud, because the judgment is the highest evidence and cannot be controverted." 15 R. C. L. p. 855, §329, and authorities cited.

So far as the cross-complaint by the board of commissioners is concerned, we may add that the board was not a party to this action, except as it applied for and obtained permission to intervene for the purpose of filing and prosecuting a cross-action to set aside the acceptance of the work; and that, so far from being a party in interest entitled to bring an action for such relief, it was merely the instrumentality designated by law to carry into effect the result of a judgment rendered by it in a proceeding to which certain taxpayers of Wayne township petitioning for the highway improvement and other taxpayers actively or passively opposing it were the parties, and was also the tribunal created by law to decide as between the contractors and objecting taxpayers whether or not the improvement had been constructed and completed so as to entitle the contractors to their money. Even if fraud in obtaining the judgment were shown, the allegations of the cross-complaint filed by the board of commissioners were insufficient to show that the board had an interest which gave it any right of action to set aside the decision it had made holding that the improvement was completed and should be accepted.

The cross-complaints on which issue was taken in the trial court having been insufficient, we do not find it necessary to consider the other questions argued by counsel.

The judgment is reversed, with directions to sustain the demurrers to the several cross-complaints.